COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-05-243-CV

 

 

BRENT GILBERT                                                                  APPELLANT

 

                                                   V.

 

GENERAL MOTORS CORPORATION                                         APPELLEES

AND
JERRY=S
CHEVROLET

 

                                              ------------

 

             FROM
THE 43RD DISTRICT COURT OF PARKER COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.      Introduction

Appellant Brent Gilbert
appeals from the trial court=s granting of a no-evidence summary judgment in favor of Appellees
General Motors Corporation (GM) and Jerry=s Chevrolet.  We affirm in part
and reverse and remand in part.

 








 

II.     Background








Gilbert purchased a 2002
Chevrolet Silverado pickup truck from Jerry=s Chevrolet in March 2002.  In
September 2003, Gilbert filed suit against GM and Jerry=s Chevrolet, alleging causes of action for violations of the Deceptive
Trade Practices Act (DTPA), violations of the occupations code,[2]
breach of contract, and breach of warranty. 
Gilbert alleged that soon after his purchase, he began experiencing a
litany of problems with the truck, including trouble with the driver=s rear door, the settings for the driver=s seat, the driver=s seat heater, the lumbar cushion, the transmission, the front end
alignment, the tires, and the engine. 
Gilbert alleged that he took the truck to Jerry=s Chevrolet numerous times, but the problems were not repaired.  Further, Gilbert alleged that after the truck
had been driven only about 26,000 miles, the motor had to be replaced, yet the
dealership concluded that the vehicle had been submerged and, therefore,
Gilbert lost his warranty on the truck. 
Jerry=s Chevrolet
also refused a re-purchase agreement.  GM
and Jerry=s Chevrolet
filed a no-evidence motion for summary judgment in which they argued that there
was no evidence to support certain elements of Gilbert=s DTPA, breach of contract, and breach of warranty claims.  The motion did not address Gilbert=s occupations code claims. 
Gilbert filed a response supported by his affidavit and several other
exhibits.

The trial court granted the
motion on May 5, 2005.  The court=s order granting the motion stated in full:

[caption]

 

ORDER GRANTING DEFENDANTS
GENERAL MOTORS CORPORATION AND JERRY=S CHEVROLET=S NO
EVIDENCE MOTION FOR SUMMARY JUDGMENT AND FINAL JUDGMENT

 








On this day the Court
considered Defendants General Motors Corporation and Jerry=s
Chevrolet=s No
Evidence Motions for Summary Judgment. 
The Court considered the Motion, the Plaintiff=s
response, if any, the arguments of the parties, and the admissible summary
judgment evidence, and is of the opinion that the Motion is well taken and
should be GRANTED and that an appropriate Order should be entered.

 

It is, therefore, ORDERED
that:

 

(1)    Defendants General Motors Corporation and Jerry=s
Chevrolet=s No
Evidence Motion for Summary Judgment is GRANTED;

 

(2)    Plaintiff TAKE NOTHING from Defendants General Motors Corporation
and Jerry=s
Chevrolet;

 

(3)    All costs of court are taxed against the Plaintiff;

 

(4)    All relief not provided for herein is expressly denied.

 

SIGNED this
5 day of May, 2005.

 

/s/____________________

    JUDGE PRESIDING

 

This appeal followed.








In his sole
point, Gilbert contends that the trial court erred in granting GM=s and Jerry=s Chevrolet=s no-evidence motion for summary judgment.[3]

III.     Finality
of Judgment








Although the
parties have not questioned finality, it is a matter essential to our
jurisdiction that we must notice on our own motion.  See N.Y. Underwriters Ins. Co. v. Sanchez,
799 S.W.2d 677, 679 (Tex. 1990).  In
general, an appeal may be taken only from a final judgment.  Lehmann v. Har-Con Corp., 39 S.W.3d
191, 195 (Tex. 2001).  Absent a
conventional trial on the merits, a judgment is final Aif and only if either it actually disposes of all claims and parties
then before the court, regardless of its language, or it states with
unmistakable clarity that it is a final judgment as to all claims and all
parties.@  Id. at 192-93.  The language of an order or judgment,
therefore, can make it final, even though it should have been interlocutory, if
that language expressly disposes of all claims and all parties.  Id. at 200.  It is not enough that the order or judgment
merely use the word Afinal,@ however.  Id.  The intent to finally dispose of the case
must be unequivocally expressed in the words of the order itself.  Id. 
But if that intent is clear from the order, then the order is final
and appealable, even though the record does not provide an adequate basis for
rendition of judgment.  Id.  Granting more relief than necessary makes the
order reversible but not interlocutory.  Id.
at 204.  For example, if a defendant
moves for summary judgment on only one of four claims asserted by the
plaintiff, but the trial court renders judgment that the plaintiff take nothing
on all claims asserted, the judgment is final, albeit erroneous.  Id. at 200.








In this
case, the pertinent language of the order reads, APlaintiff TAKE NOTHING from Defendants General Motors Corporation and
Jerry=s Chevrolet.@ The supreme
court has stated that language that the plaintiff take nothing by his claims in
the case shows finality if there are no other claims by other parties.  Id. at 205.  Here, there were no claims by any plaintiffs
other than Gilbert.  GM and Jerry=s Chevrolet were the only defendants, and there were no claims by
either of them.  Therefore, we conclude
that although GM and Jerry=s Chevrolet had not moved for summary judgment on Gilbert=s occupations code claims, the trial court effectively rendered
judgment that Gilbert take nothing on all his claims.  Thus, the judgment is final for purposes of
appeal.  See Aguilar v. LVDVD,
L.C., No. 08-01-00438-CV, 2002 WL 1732520, at *9 (Tex. App.CEl Paso July 25, 2002, pet. denied) (not designated for publication)
(holding order granting summary judgment that disposed of all claims was final
and appealable because Atake nothing@ language used in the order was sufficient to meet the Aunmistakable clarity@ standard of Lehmann); Hodde v. Portanova, No.
14-99-00656-CV, 2001 WL 224940, at *1 (Tex. App.CHouston [14th Dist.] Mar. 8, 2001, no pet.) (not designated for
publication) (holding language Atake nothing by their action@ equivalent to the language Lehmann used to illustrate
finality; therefore, judgment was final for purposes of appeal).

IV.    Gilbert=s Occupations Code Claims








Having
concluded that the trial court effectively rendered judgment that Gilbert take
nothing on all his claims, we must next address whether the trial court
had jurisdiction to dispose of Gilbert=s occupations code claims in favor of GM and Jerry=s Chevrolet.  See Tex. Ass=n of Bus. v. Tex. Air Control Bd., 852
S.W.2d 440, 445-46 (Tex. 1993) (holding that it is appropriate for reviewing
court to raise sua sponte issue of lower court=s subject matter jurisdiction).

Texas
Occupations Code section 2301.151 states,

(a)     The board has the exclusive original jurisdiction to regulate
those aspects of the distribution, sale, or lease of motor vehicles that are
governed by this chapter, including the original jurisdiction to determine its
own jurisdiction.

 

(b)    The board may take any action that is specifically designated or
implied under this chapter or that is necessary or convenient to the exercise
of the power and jurisdiction granted under Subsection (a).

 

Tex.
Occ. Code Ann. ' 2301.151
(Vernon 2004); see also Subaru of Am., Inc. v. David McDavid Nissan,
Inc., 84 S.W.3d 212, 223 (Tex. 2002) (holding that the board has exclusive
jurisdiction over claims and issues the code governs).  Thus, before the trial court has jurisdiction
over a party=s code-based
claims, the party must first exhaust administrative remedies to obtain a board
decision about code violations, if any, to support the claims.  See Subaru of Am., Inc., 84
S.W.3d at 224, 228.








Here,
Gilbert has not exhausted his administrative remedies and obtained final board
findings about any code violations that support his code-based claims.  Therefore, we hold that the trial court erred
in granting summary judgment on Gilbert=s occupations code claims in favor of GM and Jerry=s Chevrolet because those claims are not yet within the trial court=s jurisdiction.  We reverse and
remand the claims to the trial court with instructions that the trial court
abate its proceedings until Gilbert exhausts his administrative remedies.  See id. at 228.

 

 

 

 

 

 

V.     Gilbert=s Remaining Claims

A.     Standard of Review[4]








After an
adequate time for discovery, the party without the burden of proof may, without
presenting evidence, move for summary judgment on the ground that there is no
evidence to support an essential element of the nonmovant=s claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence. 
Id.; Johnson v. Brewer & Pritchard, P.C., 73
S.W.3d 193, 207 (Tex. 2002).  The trial
court must grant the motion unless the nonmovant produces summary judgment
evidence that raises a genuine issue of material fact.  See Tex.
R. Civ. P. 166a(i) & cmt.; Sw. Elec. Power Co. v. Grant, 73
S.W.3d 211, 215 (Tex. 2002). We review the
evidence in the light most favorable to the party against whom the no-evidence
summary judgment was rendered.  King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003), cert.
denied, 541 U.S. 1030 (2004); Johnson, 73 S.W.3d at 197; Morgan
v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000). 
If the nonmovant brings forward more than a scintilla of probative
evidence that raises a genuine issue of material fact, then a no-evidence
summary judgment is not proper.  Moore
v. K Mart Corp., 981 S.W.2d 266, 269 (Tex. App.CSan Antonio 1998, pet. denied).

B.     Summary Judgment Evidence








As
previously stated, GM=s and Jerry=s Chevrolet=s
no-evidence motion for summary judgment challenged whether there is evidence to
support certain elements of Gilbert=s DTPA, breach of contract, and breach of warranty claims. In
response, Gilbert attached his own affidavit, as well as several documents that
had been produced by him to GM and Jerry=s Chevrolet in response to discovery requests.  Further, Gilbert refers us to several
additional documents that he has attached to his brief.

First, we
cannot consider documents attached to an appellate brief that do not appear in
the record.  Castano v. San Felipe
Agric., Mfg., & Irrigation Co., 147 S.W.3d 444, 453 (Tex.
App.CSan Antonio 2004, no pet.); Till v. Thomas, 10 S.W.3d 730, 733
(Tex. App.CHouston [1st
Dist.] 1999, no pet.).  This court must
hear and determine a case based on the record as filed and may not consider
documents attached as exhibits to briefs. 
Till, 10 S.W.3d at 733.          Second, documents submitted as summary
judgment proof must be sworn to or certified. 
Tex. R. Civ. P. 166a(f); Medford
v. Medford, 68 S.W.3d 242, 246 (Tex. App.CFort Worth 2002, no pet.); Llopa, Inc. v. Nagel, 956
S.W.2d 82, 87 (Tex. App.CSan Antonio
1997, pet. denied).  Unauthenticated or
unsworn documents, or documents not supported by any affidavit, are not
entitled to consideration as summary judgment evidence.  Medford, 68 S.W.3d at 247; Llopa,
Inc., 956 S.W.2d at 87.








Here, all of
the documents attached to Gilbert=s summary judgment response, except for his affidavit, are
unauthenticated.  Although Gilbert=s affidavit mentions some of the other attached documents, the
affidavit makes no attempt whatsoever to authenticate the documents.  Cf. Republic Nat=l Leasing Corp. v. Schindler, 717 S.W.2d
606, 607 (Tex. 1986) (holding trial court correct in considering documents
attached to properly prepared affidavit when affidavit stated attached
documents were true and correct copies of originals).  Neither were the documents
self-authenticating.  All of the
documents attached to Gilbert=s summary judgment response, except for his affidavit, were produced by
him to GM and Jerry=s Chevrolet
in response to discovery requests.  A
party cannot authenticate a document for use in its own favor by merely
producing it in response to a discovery request.  Blanche v. First Nationwide Mortgage Corp.,
74 S.W.3d 444, 452 (Tex. App.CDallas 2002, no pet.).








Thus, we are
left with Gilbert=s affidavit
as the only competent summary judgment evidence before the trial court.[5]  We now turn to the issue of whether Gilbert=s affidavit constitutes more than a scintilla of evidence on the
elements challenged by GM and Jerry=s Chevrolet.[6]

C.     DTPA Claims








To maintain
a cause of action under the DTPA, a plaintiff must establish the
following:  (1) the plaintiff was a
consumer; (2) the defendant committed a Alaundry-list@ violation
under DTPA section 17.46(b) on which the plaintiff detrimentally relied,
breached an express or implied warranty, or engaged in any unconscionable
action or course of action; and (3) the wrongful act was a producing cause of
the plaintiff=s
damages.  Wall v. Parkway Chevrolet,
Inc., 176 S.W.3d 98, 105 (Tex. App.CHouston [1st Dist.] 2004, no pet.); see Tex. Bus. & Com. Code Ann. '' 17.46(b), 17.50(a) (Vernon Supp. 2005).

In his
original petition, Gilbert specifically alleged that GM and Jerry=s Chevrolet engaged in an unconscionable action or course of action
under the DTPA and committed three laundry-list violations under DTPA section
17.46(b):  (1) representing that goods or
services have sponsorship, approval, characteristics, ingredients, uses,
benefits, or quantities which they do not have or that a person has a sponsorship,
approval, status, affiliation, or connection which he does not, see Tex. Bus. & Com. Code Ann. ' 17.46(b)(5); (2) representing that goods or services are a particular
standard, quality or grade, or that goods are of a particular style or model,
if they are of another, see id. ' 17.46(b)(7); and (3) failing to disclose information about goods or
services that was known at the time of the transaction if the failure to
disclose was intended to induce the consumer into a transaction that the
consumer would not have entered into had the information been disclosed, see
id. '
17.46(b)(24).  Moreover, Gilbert alleged
that GM and Jerry=s Chevrolet
acted intentionally.

 








1.     Unconscionability Claim

Regarding
Gilbert=s unconscionability claim, GM and Jerry=s Chevrolet challenged whether there is evidence that they acted
unconscionably or that any act or practice attributable to them was the
producing cause of any damages. 
Considering Gilbert=s affidavit in conjunction with the elements required for an
unconscionability claim under the DTPA, and viewing that evidence in the light
most favorable to Gilbert, we conclude that Gilbert brought forward more than a
scintilla of probative evidence that raises a genuine issue of material fact on
each element of this cause of action.








To prove
unconscionability under the DTPA, a plaintiff must prove an act or practice
which, to a consumer=s detriment,
takes advantage of his lack of knowledge, ability, experience, or capacity to a
grossly unfair degree.  See id. ' 17.45(5) (Vernon 2002).  Here,
Gilbert=s affidavit states that he purchased a new pickup truck and an
extended service agreement from Jerry=s Chevrolet in March of 2002; however, only twenty-seven days later,
he began experiencing problems with the truck. 
From April through September of 2002, he repeatedly took the truck in
for service, yet none of the problems were corrected.  Gilbert stated that instead, GM and Jerry=s Chevrolet misstated the reasons his vehicle was brought in for
service, ignored mechanical defects, and told him that nothing was found wrong
with the vehicle.  Finally, after the
truck had been driven only about 26,000 miles, the engine had to be replaced,
and the service department claimed that the vehicle had been Asubmerged@ and,
therefore, wrongfully revoked his extended service agreement.

Viewed in
the light most favorable to Gilbert, we hold that this evidence raises a fact
issue about whether GM and Jerry=s Chevrolet engaged in an unconscionable action or course of action
and whether the act was a producing cause of Gilbert=s damages; therefore, we hold that Gilbert=s affidavit is sufficient to raise an issue of fact regarding his
unconscionability claim.  The trial court
improperly granted summary judgment on this claim.

2.     Laundry-List Violations








Regarding
Gilbert=s laundry-list claims, GM and Jerry=s Chevrolet challenged whether there is evidence that they engaged in
a false, misleading, or deceptive act or practice, that Gilbert detrimentally
relied on any act or practice, or that any act or practice was a producing
cause of any damages.      First, we will
discuss Gilbert=s failure to
disclose claim.  Under the DTPA, the term
Afalse, misleading, or deceptive acts or practices@ includes Afailing to
disclose information concerning goods or services which was known at the time
of the transaction if such failure to disclose such information was intended to
induce the consumer into a transaction into which the consumer would not
have entered had the information been disclosed.@  Id. ' 17.46(b)(24) (emphasis added). 
The term Atransaction@ contemplates an act or acts whereby an alteration of legal rights
occur.  Doe v. Boys Clubs of Greater
Dallas, Inc., 868 S.W.2d 942, 954 (Tex. App.CAmarillo 1994), aff=d, 907 S.W.2d 472 (Tex. 1995).








Here,
Gilbert=s affidavit states that GM and Jerry=s Chevrolet failed to disclose the vehicle=s defective status to him with the intent of inducing him into keeping
the vehicle.  However, merely keeping the
vehicle is not a transaction.  See,
e.g., Bradford v. Vento, 48 S.W.3d 749, 760 (Tex. 2001) (holding no
evidence of any transaction between shopping mall manager and buyer of mall
store where buyer had already purchased store at time he discussed possibility
of long-term lease with manager, rent he paid was due under existing lease, and
buyer and manager did not negotiate a new lease).  Consequently, we hold that Gilbert=s affidavit is not sufficient to raise an issue of fact on each
element of Gilbert=s claim for
failure to disclose.  See Tex. Bus. & Com. Code Ann. ' 17.46(b)(24).  Therefore, the
trial court properly granted summary judgment on this claim.








On the other
hand, we conclude that Gilbert brought forward more than a scintilla of
probative evidence that raises a genuine issue of material fact as to each
element of his claims that GM and Jerry=s Chevrolet represented that the truck had characteristics and uses
that it did not have and that they represented that the truck was a particular
standard or quality when it was not. 
Gilbert=s affidavit
states that GM and Jerry=s Chevrolet
made misrepresentations that his pickup truck was a new, safe, and reliable
vehicle when, in fact, it was defective as evidenced by the litany of problems
for which he took it in for service during the months of April through
September of 2002. The problems included, but were not limited to, Awind noise in the driver=s side rear door, driver=s seat not holding settings and reclining while vehicle is in use,
driver=s seat heater inoperable, engine top-end knocking, lumbar cushion
airing up on its own while vehicle in use, transmission slipping, and incorrect
tire alignment.@  Furthermore, Gilbert=s affidavit states that when the vehicle was returned to him after
servicing, he was told that nothing was found wrong with it when, according to
Gilbert, the vehicle was defective.  This
evidence raises a fact issue about whether GM and Jerry=s Chevrolet represented that the truck had characteristics and uses
that it did not have and whether they represented that the truck was a
particular standard or quality when it was not. 
See id. '
17.46(b)(5), (7).

Moreover,
Gilbert=s affidavit states that he relied to his detriment on GM=s and Jerry=s Chevrolet=s representations, causing him to suffer damages, because, among other
things, he kept the vehicle and continued to make payments toward the balance
owed on the note and he took time off work and lost wages in order to deal with
the problems he was experiencing with the truck.  Therefore, a fact issue is raised as to
whether Gilbert detrimentally relied on any false, misleading, or deceptive act
or practice by GM and Jerry=s Chevrolet and whether any act or practice was a producing cause of
damages. 

Consequently,
we hold that Gilbert=s affidavit
is sufficient to raise an issue of fact regarding his misrepresentation
claims.  See id.  Therefore, the trial court improperly granted
summary judgment on these claims.

3.     Intent








Finally, GM
and Jerry=s Chevrolet
also challenged whether there is evidence that they acted intentionally, as
alleged in Gilbert=s original
petition. Section 17.45 of the DTPA defines Aintentionally@ as

actual awareness of the falsity, deception, or unfairness of the act
or practice . . . giving rise to the consumer=s
claim, coupled with the specific intent that the consumer act in detrimental
reliance on the falsity or deception or in detrimental ignorance of the
unfairness.  Intention may be inferred
from objective manifestations that indicate that the person acted intentionally
or from facts showing that a defendant acted with flagrant disregard of prudent
and fair business practices to the extent that the defendant should be treated
as having acted intentionally.

 

Id. '
17.45(13).  Viewed in the light most favorable
to Gilbert, we hold that the affidavit as discussed above raises a fact issue
about whether GM and Jerry=s Chevrolet acted intentionally. 
Thus, the trial court improperly granted summary judgment as to this
claim.

D.     Breach of Contract Claim








In order to
prove a breach of contract, a plaintiff must demonstrate the following:  (1) the existence of a valid contract; (2)
performance or tendered performance by the plaintiff; (3) breach of the
contract by the defendant; and (4) damages sustained by the plaintiff as a
result of the breach.  Sullivan v.
Smith, 110 S.W.3d 545, 546 (Tex. App.CBeaumont 2003, no pet.); Renteria v. Trevino, 79 S.W.3d 240,
242 (Tex. App.CHouston
[14th Dist.] 2002, no pet.).  GM and
Jerry=s Chevrolet challenged whether there is any evidence to support the
first, third, and fourth elements.

Gilbert=s affidavit states that at the time he purchased the pickup truck, he
also purchased an extended service agreement through the dealership for
$1,785.00; however, when the engine on the pickup truck had to be replaced, the
service department told him the vehicle had been Asubmerged,@ when it had
not, and then revoked the service agreement. 
These statements provide the basic underlying facts to support the
conclusion that an agreement was made, Gilbert tendered performance and GM and
Jerry=s Chevrolet did not, and Gilbert suffered damages as a result of GM=s and Jerry=s Chevrolet=s failure to perform.  Thus, the
statements in the affidavit are sufficient to raise a fact issue as to whether
the parties formed an agreement, whether the agreement was breached, and
whether Gilbert sustained damages as a result.

Therefore,
we hold that Gilbert=s affidavit is
sufficient to raise an issue of fact regarding his breach of contract claim
and, thus, the trial court improperly granted summary judgment on this claim.

E.     Breach of Warranty Claim








Finally,
although in his pleadings Gilbert=s breach of warranty claim is not specific,[7]
we conclude that the statements in his affidavit are sufficient to raise a fact
issue as to whether there was a breach of the implied warranty of
merchantability.

A plaintiff
in an implied warranty of merchantability case has the burden of proving that a
product was defective at the time it left the manufacturer=s or seller=s
possession.  Chandler v. Gene Messer
Ford, Inc., 81 S.W.3d 493, 502 (Tex. App.CEastland 2002, pet. denied).  To
prove that the product was defective, he must show that it was unfit for the
ordinary purpose for which it was used because of a lack of something necessary
for adequacy.  Hyundai Motor Co. v.
Rodriguez, 995 S.W.2d 661, 665 (Tex. 1999). 
A plaintiff does not have to use direct or expert opinion evidence to
show that a product has a defect; he can instead meet his burden by using
circumstantial evidence.  Plas-Tex,
Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 444 (Tex. 1989).  A consumer may satisfy his burden by showing
that a product functioned improperly under normal use.  See id. at 444-45.








The ordinary
purpose of an automobile is to provide transportation.  Chandler, 81 S.W.3d at 503.  Here, Gilbert=s affidavit states that he purchased a new pickup truck, yet only
twenty-seven days later, he began experiencing problems with the truck.  As previously stated, the problems included,
but were not limited to, Awind noise
in the driver=s side rear
door, driver=s seat not
holding settings and reclining while vehicle is in use, driver=s seat heater inoperable, engine top-end knocking, lumbar cushion
airing up on its own while vehicle in use, transmission slipping, and incorrect
tire alignment.@  Furthermore, after the truck had been driven
only about 26,000 miles, the engine had to be replaced.

Gilbert=s affidavit also states that from April through September 2002, he
repeatedly took the truck in for service, yet none of the problems were
corrected.  Consequently, he suffered
damages because, among other things, he kept the vehicle and continued to make
payments toward the balance owed on the note and he took time off work and lost
wages in order to deal with the problems with the truck.  Moreover, Gilbert=s affidavit states that he believed the vehicle was unsafe.








Again,
viewed in the light most favorable to Gilbert, we conclude that the statements
in the affidavit are sufficient to raise a fact issue as to whether GM and
Jerry=s Chevrolet breached the implied warranty of merchantability and
whether Gilbert suffered damages as a result of the breach. Therefore, we hold
that Gilbert=s affidavit
is sufficient to raise an issue of fact regarding his breach of warranty claim
and, thus, the trial court improperly granted summary judgment on this claim.

 

 

VI.    Conclusion








Because we
hold that Gilbert=s affidavit
is not sufficient to raise an issue of fact on each element of his failure to
disclose claim under the DTPA, we affirm the trial court=s judgment as to that claim. 
However, we reverse the trial court=s judgment as to his remaining DTPA claims, his breach of contract
claim, and his breach of warranty claims and remand for trial because we hold
that Gilbert=s affidavit
is sufficient to raise an issue of fact as to those claims.  Finally, because Gilbert=s occupations code claims were not within the trial court=s jurisdiction, we reverse and remand the claims to the trial court
with instructions that the trial court abate its proceedings until Gilbert
exhausts his administrative remedies.  See
Subaru of Am., Inc., 84 S.W.3d at 228.

 

 

ANNE GARDNER

JUSTICE

PANEL F:    DAUPHINOT, HOLMAN,
and GARDNER, JJ.

DELIVERED:  June 22, 2006

 











[1]See Tex. R. App. P. 47.4.





[2]In
his original petition, Gilbert actually alleged violations of sections 4.07(a)
and 5.01(1) of the Texas Motor Vehicle Code; however, effective June 1, 2003,
and before the petition in this case was filed, those statutes were repealed
and nonsubstantively recodified as sections 2301.205 and 2301.352,
respectively, of the occupations code.  See
Act of May 22, 1997, 75th Leg., R.S., ch. 639, ' 27,
1997 Tex. Gen. Laws 2185, 2197, repealed by Act of May 22, 2001, 77th
Leg., R.S., ch. 1421, ' 13,
2001 Tex. Gen. Laws 4570, 5020 (current version at Tex. Occ. Code Ann. ' 2301.352 (Vernon 2004)); Act
of May 19, 1995, 74th Leg., R.S., ch. 357, ' 15, 1995 Tex. Gen. Laws
2887, 2894, repealed by Act of May 22, 2001, 77th Leg., R.S., ch. 1421, ' 13,
2001 Tex. Gen. Laws 4570, 5020 (current version at Tex. Occ. Code Ann. ' 2301.205(a) (Vernon 2004)); see
also House Comm. on State Affairs,
Bill Analysis, Tex. H.B. 2813, 77th Leg., R.S. (2001) (emphasizing that
the amendment of the occupations code was a nonsubstantive revision and that
the legislative intent was to recodify only). 
Therefore, we will refer to these causes of action as occupations code
claims.





[3]Appellant=s
sole point is sufficient to preserve his complaint.  See Malooly Bros., Inc. v. Napier,
461 S.W.2d 119, 121 (Tex. 1970) (recommending a general point of error stating Athe
trial court erred in granting the motion for summary judgment@).  We are guided by the principle that we must
construe the rules on briefing liberally. 
See Tex. R. App. P.
38.9; Republic Underwriters Ins. Co. v. Mex-Tex, Inc., 150 S.W.3d
423, 427 (Tex. 2004) (emphasizing that court has instructed courts of appeals to
construe briefs liberally and not impose requirements not Aabsolutely
necessary@ to
effectuate the purpose of the briefing rules).





[4]GM
and Jerry=s
Chevrolet contend that Gilbert has waived error and that his appeal should be
dismissed because he failed to cite any legal authority. However, the standards
for reviewing summary judgments are well known. 
See Jennings v. Burgess, 917 S.W.2d 790, 792-93 (Tex. 1996).





[5]GM
and Jerry=s
Chevrolet did not object to the affidavit in the trial court.  Furthermore, Gilbert=s
affidavit contains factual statements based on his personal knowledge and a
statement that he is competent to testify to those matters.  See Tex.
R. Civ. P. 166a(f).  Therefore,
the affidavit is properly before the court.





[6]GM
and Jerry=s
Chevrolet contend that Gilbert=s appeal should be dismissed
because he failed to cite to any evidence in the record; however, we note that
the record in this case is very thin and that since the motion for summary
judgment was based on Ano
evidence,@ we
need not Asearch
the record@
because the evidence is contained in Gilbert=s one affidavit.





[7]We
note that GM and Jerry=s
Chevrolet filed no special exceptions.